1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  NANCY M. GORDON, an individual, | Case No.:  23-cv-01507 W (SBC) |
| 12                  Plaintiff, | |
| 13  v. | **ORDER (1) GRANTING IN PART MOTION TO DISMISS [DOC. 6]; (2) GRANTING MOTION TO REMAND [DOC. 5]; AND (3) REMANDING CASE TO THE SAN DIEGO SUPERIOR COURT** |
| 14  KAISER FOUNDATION HEALTH PLAN, INC., a California Corporation; KARA W. BARNETT; and SHETAL M. PATEL, | |
| 15 | |
| 16 | |
| 17                  Defendants. | |

18

19   Defendants removed this action from the San Diego Superior Court on August 16,

20  2023. (*See Notice of Removal* [Doc. 1].) Plaintiff Nancy M. Gordon moves to remand.

21  (*Mot.* [Doc. 5].) Defendants Kaiser Foundation Health Plan, Kara W. Barnett, and Shetal

22  M. Patel oppose the motion (*Opp'n* [Doc. 8]) and move to dismiss under Federal Rule of

23  Civil Procedure 12(b)(6) (*MTD* [Doc. 6]).

24   The Court decides the matter on the paper submitted and without oral argument.

25  *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART**

26  Defendants' motion to dismiss [Doc. 6] and **GRANTS** Plaintiff's motion to remand

27  [Doc. 5].

28

1

I.     **BACKGROUND**

According to the Complaint, Plaintiff Nancy M. Gordon is a licensed clinical social worker and certified life coach who writes self-help books based on her personal traumatic experiences. (*Compl.* ¶ 8.[1]) In approximately October 2014, Gordon created and published *7 STEPS of HOPE Healing the Emotional, Mental, and Spiritual Impact of Chronic Illness and Disability* (the "Workbook"). (*Id.*)

In 2015, Gordon attended physical therapy at one of Defendant Kaiser Foundation Health Plan, Inc.'s facilities to help manage her pain. (*Compl.* ¶ 9.) While in physical therapy, she discussed her Workbook and desire to market it with her physical therapist, who recommended she speak to a therapist in the pain department. (*Id.*) Gordon alleges that her intent at all times was to offer the use of the concepts in her Workbook and/or her services in exchange for compensation. (*Id.* ¶ 9.)

During a subsequent phone call between Gordon and Defendant Kara W. Barnett, a physical therapist in Kaiser's pain department, Barnett "expressed" Kaiser's interest in the Workbook for their pain program and asked to borrow it. (*Compl.* ¶ 10.) After lending the Workbook to Barnett, the two met for lunch and Barnett asked if she could keep the Workbook longer to show it to other decision-making authorities. (*Id.* ¶ 11.) Gordon declined but agreed to sell the Workbook instead. (*Id.*) Gordon believes Defendant Shetal M. Patel was one of the people who saw the Workbook. (*Id.*)

Subsequently, Gordon and Barnett met again for lunch.  (*Compl.* ¶ 12.)  At this meeting, Gordon had Barnett execute a Nondisclosure Agreement (NDA) with the intention of "prevent[ing] unauthorized use or disclosure of Plaintiff's materials without an agreement to pay for the same, including, without limitation, the Workbook." (*Id.*) Gordon also rescinded the sale of the Workbook and, "after a few months, returned the money to defendant BARNETT, and acquired the Workbook back." (*Id.* ¶ 13.) When

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit 1 [Doc. 1-3].

Gordon "requested the return of the Workbook, defendant BARNETT requested [Gordon] destroy the NDA claiming additionally that, 'I have not shared any of your information.'" (*Id.*)

Gordon left Kaiser in 2018, but returned as a patient in January 2021. (*Compl.* ¶ 14.) While attending the program, Gordon realized the "content being used by defendants BARNETT and PATEL for the pain program was the same as, or, at least, substantially similar to, the content of her Workbook, including, but not limited to, the same phrases, sentences, questions, and exercises." (*Id.*) Gordon, therefore, alleges Barnett misrepresented nonuse, and contends Defendants never credited her as the source of the content or provided compensation for using her Workbook to help create the content for the six-week pain program. (*Id.* ¶¶ 15, 16)

On June 15, 2023, Gordon filed this lawsuit in the San Diego Superior Court. The Complaint asserts nine causes of action for: (1) Breach of Implied Contract; (2) Quasi-Contract (Assumpsit); (3) Monetary and Punitive Damages Resulting from Fraud and Deceit – Intentional Misrepresentation, Nondisclosure, and/or Concealment/Suppression; (4) Monetary Damages Resulting from Fraud and Deceit – Negligent Misrepresentation; (5) Intentional Infliction of Emotional Distress; (6) Negligent Infliction of Emotional Distress; (7) Monetary Damages for Negligence; (8) Injunction and Restoration of Money and/or Property Resulting from Violation of Business & Profession Code § 17200; and (9) Civil Conspiracy. (*See Compl.*)

On August 16, 2023, Defendants removed the case to this Court based on federal question jurisdiction, 28 U.S.C. § 1331. (*Notice of Removal* ¶ 4.) Although the Complaint does not assert any federal claims, Defendants contend all of Gordon's causes of action are preempted by the Copyright Act, 17 U.S.C. § 301(a).  (*Id.*)

On September 5, 2023, Gordon filed the motion to remand. (*See Remand Mot.* [Doc 5].)  On September 11, 2023, Defendants filed the motion to dismiss.  (*See MTD* [Doc. 6].)

1    **II.    LEGAL STANDARD**

2        **A.    Motion to Remand**

3        The removal statute, 28 U.S.C. § 1441, allows a defendant to remove an action

4    when a case originally filed in state court presents a federal question or is between

5    citizens of different states, involving an amount in controversy that exceeds $75,000. *See*

6    28 U.S.C. §§ 1331, 1332(a), 1441(a)-(b), 1446. "Absent diversity of citizenship, federal-

7    question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

8    Only state court actions that could originally have been filed in federal court can be

9    removed. 28 U.S.C. § 1441(a); *Caterpillar Inc.*, 482 U.S. at 392.

10       The Ninth Circuit strictly construes the removal statute "against removal

11   jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the

12   right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th

13   Cir.1992). The strong presumption against removal jurisdiction means that the defendant

14   always has the burden of establishing that removal is proper. *Id.*

15       Federal question jurisdiction is governed by the well-pleaded complaint, providing

16   that federal jurisdiction exists only when a federal question is presented on the basis of

17   the plaintiff's properly pleaded complaint. *Caterpillar Inc.*, 482 U.S. at 392. "It must be

18   clear from the face of plaintiff's well-pleaded complaint that there is a federal question."

19   *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 929 (N.D. Cal. 2015) (quoting *Duncan

20   v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 2010)). A plaintiff "may not defeat removal by

21   omitting to plead necessary federal questions in a complaint." *Regents of University of

22   California v. Aisen*, 143 F.Supp.3d 1055, 1056-57 (S.D. Cal. 2015) (quoting *JustMed v.

23   Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010)). While generally an affirmative defense may

24   not serve as the basis for federal question jurisdiction, federal copyright preemption does.

25   *See Dielsi v. Falk*, 916 F.Supp. 985, 993 (C.D.Cal. 1996) (citing *Caterpillar, Inc. v.

26   Williams*, 482 U.S. 386, 392 (1987) and *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d

27   225, 232–33 (4th Cir. 1993)).

28

**B.      Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To do so, it must offer sufficient factual allegations that, if true, "raise the right to relief above the speculative level" and render the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). If, however, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (citation omitted).

In evaluating the motion, the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 842 F.3d 1156, 1159 (9th Cir. 2016). But this presumption of validity does not extend to legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, the pleading analysis requires the court to eliminate all of plaintiff's conclusory allegations and evaluate the remaining claims for facial plausibility.

**III.   D**ISCUSSION

Gordon moves to remand arguing that removal was improper because the Complaint does not contain any federal causes of action and thus there is no federal question jurisdiction. (*Remand P&A* [Doc. 5-1] at 1–15.) Defendants oppose arguing that

removal was proper because the Federal Copyright Act preempts all of Gordon's state-based causes of action. (*Remand Opp'n* [Doc. 8] at 1:2—6.) For the same reason, Defendants seek to dismiss all of Gordon's causes of action. (*MTD P&A* [Doc. 6-1] at 1:7–12.) Accordingly, resolution of both motions turns in whether Gordon's causes of action are preempted by the Copyright Act.

### A.    Preemption Analysis

The Copyright Act provides that "Congress shall have the Power … To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. 1, § 8, cl. 8. Pursuant to this authority, Congress enacted the Copyright Act, 17 U.S.C. §§ 101–1332, to define and protect the rights of copyright holders. For instance, under the Act, the owner of a copyright has exclusive rights to do and to authorize others to display, perform, reproduce, distribute, and prepare derivative works. 17 U.S.C. § 106. Because Congress intended federal law to occupy the entire field of copyright, Section 301(a) of the Act preempts all state-based causes of action as follows:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.

*Id*.

A two-part test is used to determine whether a state-law cause of action is preempted by the Copyright Act. *See Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017). First, the court must determine whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102–103. *Laws*, 448 F.3d at 1137. Second, the court must determine whether the rights asserted under the

state-law cause of action are equivalent to the rights contained in 17 U.S.C. § 106. *Id.* at 1137–38.

### 1.    The subject matter of Gordon's state-law causes of action.

The first prong in the preemption analysis is whether Gordon's causes of action "come within the subject matter of copyright."  17 U.S.C. § 201(b).  Relevant to this issue is that "the scope of the subject matter of copyright law is broader than the protections it affords." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (*citing* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 19D.03[A][2][b] (rev. ed. 2010)).  Thus, state-law claims that are not preempted under the second prong of the analysis may still fall within the subject-matter of copyright. *Id.* ("state-law protection for fixed ideas falls within the subject matter of copyright… despite the exclusion of fixed ideas from the scope of actual copyright protection.")  The central issue is whether the claim is based on ideas that have been written down: "Ideas that are still purely airborne are… not even within the subject matter of copyright.  Once an idea has been written down or otherwise recorded… we have recognized that it satisfies the Copyright Act's writing requirement because it is fixed in a tangible medium." *Id.* (citing *In re World Auxiliary Power Co.*, 303 F.3d 1120, 1131 (9th Cir. 2002)).

Gordon argues her causes of action are not within the subject matter of copyright because she is not suing Defendants "for distributing portions of her Workbook in a pain management program (a copyright claim), but for abusing the relationship of confidence reposed in Defendants by using her system, process, or method in a workshop setting…." (*Remand Reply* [Doc. 9] at 2:6–9; *MTD Opp'n* [Doc. 10] at 4:13–16.) But Defendants' alleged abuse of confidence is premised on their use of her system, process, or ideas that are "fixed" in her Workbook.  For example, the Complaint alleges that Defendants used "the content of her Workbook, including, but not limited to, the same phrases, sentences, questions, and exercises." (*Compl.* ¶ 14.)  Each of the causes of action then reference

7

Defendants' use of the Workbook, its content or materials.  (*Id.* ¶¶ 25, 27, 29, 30, 37, 38, 46, 55.)  Accordingly, the Court finds Gordon's causes of action all fall within the subject matter of copyright.

### 2.   Equivalent rights analysis.

The second prong of the preemption analysis focuses on whether Gordon's state-law causes of action "assert rights that are qualitatively different from the rights protected by copyright: whether the asserted state right is equivalent to any of the exclusive rights within the general scope of copyright." *Montz*, 649 F.3d at 980 (citing *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004)). In other words, to "survive preemption, a state cause of action must assert rights that are qualitatively different from the rights protected by copyright." *Id.*

To determine whether the state law claims are equivalent, courts look for an extra element that is required in addition to or in place of reproduction, performance, distribution, or display of derivative works protected under Section 106. *Laws*, 448 F.3d at 1137–1138. If a state law claim includes an extra element that makes the rights asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). But the additional element must transform the nature of the action. *Laws*, 448 F.3d at 1145. This means that even if the elements of the state law cause of action differ from those of a copyright action, if the underlying nature of the state law cause of action is part and parcel of a copyright claim, then it is preempted. *Id.*

### i.   First Cause of Action: Breach of Implied Contract

Gordon argues her cause of action for breach of implied contract is not preempted under *Desny v. Wilder*, 46 Cal. 2d 715, 738 (1956). (*Remand Reply* at 5:1–18; *MTD Opp'n* at 7:10–27.) Defendants argue *Desny* does not apply because her claim is not

based on the "procurement of Plaintiff's idea… but rather the unauthorized use of parts of Plaintiff's copyrighted Workbook…." (*Remand Opp'n* at 11:14–19.)

A *Desny* claim for breach of an implied contract is not preempted by the Copyright Act. *Montz*, 649 F.3d at 976. To plead a *Desny* claim, the plaintiff must allege facts showing "that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 F.3d at 968. In *Montz*, the Ninth Circuit explained that the "essential element" for a *Desny* claim is demonstrating a "bilateral expectation that [plaintiff] would be compensated for use of the idea." *Id.* at 977. The bilateral expectation of payment "constitutes an additional element that transforms a claim from one asserting a right exclusively protected by federal copyright law, to a contractual claim that is not preempted by copyright law." *Id.* at 976 (citing *Grosso*, 383 F.3d 965 (9th Cir. 2004)). However, if disclosure occurs before it is known that compensation is a condition for use of the idea, no contract will be implied. *Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1196 (9th Cir. 1986).

Here, the Complaint alleges Gordon "created the Workbook from her personal knowledge and experience and published the Workbook." (*Compl.* ¶ 8.) In short, Gordon prepared the work. Next, the Complaint alleges Gordon "discussed her Workbook and desire to market it and her services *for remuneration* with her physical therapist who recommended that she speak to defendant BARNETT." (*Id.* ¶ 9, emphasis added.) This allegation is sufficient to establish that Gordon disclosed the work to Defendants for sale. Finally, the Complaint alleges Defendants "accepted the Workbook with the understanding that Plaintiff wanted to market her materials and services and work together with said defendants for compensation." (*Id.* ¶ 19.) This indicates that Defendants voluntarily accepted Gordon's disclosure of the Workbook and understood the conditions on which it was tendered to them. Based on these allegations, Gordon has alleged a *Desny* claim for breach of an implied contract.

Defendants nevertheless argue that *Desny* does not apply because Gordon's claims "stem from the use and/or distribution of Plaintiff's copyrighted work without permission and/or compensation." (*MTD P&A* at 8:14–17.)  According to Defendants, where, "as in this case, … an implied contract purports to regulate the right to reproduce, distribute, and/or sell copyrighted works, such an implied contract is found to involve rights 'equivalent' to those protected by the Copyright Act." (*Remand Opp'n* at 10:2–5.)  In support of this argument, Defendants point to "[n]umerous federal decisions analyzing state claims under 'implied contact' theories [that] have held such state claims are preempted by the Copyright Act." (*Id.* at 10:24–11:4.)

The problem with Defendants' argument is that the "numerous federal [district court] decisions" cited predate the Ninths Circuit's decisions in *Grosso* (2004) and *Montz* (2011) and, therefore used a different approach to evaluate the equivalent-rights prong. For example, in *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053 (C.D. Cal. 2000), the district court began its analysis by recognizing that "the Ninth Circuit has not decided under what circumstance, if any, the [Copyright] Act preempts a claim for breach of an express contract or implied-in-fact contract." *Id.* at 1059.  As a result, the district court was forced to come-up with an approach for evaluating the issue. *Id.* at 1061. The court settled on a "fact-specific approach" requiring an analysis of whether "the right in question is 'infringed by the mere act of reproduction, performance, distribution or display.'" *Id.* (citing *National Car Rental v. Computer Associates*, 991 F.2d 426, 431 (1993)).   Ultimately, the court found the claim was preempted because the "alleged implied-in-fact contract between Selby and defendants did not regulate the parties' conduct beyond mere use of Selby's ideas," and therefore "the rights protected by that contract were equivalent to the exclusive rights protected by the Act." *Id.* at 1062.

In the context of a breach of implied contract claim, *Selby*'s approach seems to be at odds with *Grosso* or *Montz*, which both emphasize that the critical issue is whether there existed a bilateral understanding of payment before the idea or manuscript was shared with the defendant. *See Montz*, 649 F.3d at 976 (citing *Grosso*, 383 F.3d 965 (9th

10

Cir. 2004)). Moreover, *Montz* cited *Selby* as an example of a time when litigation moved from California courts to federal courts as "defendants … hoped for greater success in pressing the copyright preemption issue."  *Id.* at 980.  *Montz* explained, however, that after *Selby*, another "district court held that an implied-in-fact contract claim survived Copyright Act preemption because it was substantively different from a copyright claim."  *Id.* at 980–981 (citing *Groubert v. Spyglass Entm't Group*, 2002 WL 2031271, at *4 (C.D.Cal. July 23, 2002)) *Montz* explicitly stated: "[w]e agreed with this [i.e., *Groubert's*] assessment when we decided in *Grosso* that copyright law does not preempt an implied contractual claim to compensation for use of a submitted idea.  We reaffirm that rule today."  *Id.* at 981.  Thus, neither *Selby* nor the other district court cases Defendants cite (most of which rely on *Selby*) reflect the current state of this Circuit's equivalent-rights analysis in the context of breach of implied contract causes of action.

Next, Defendants argue *Desny* does not apply because Gordon's breach of contract claim is based on their alleged use of the Workbook as opposed to the ideas expressed in the Workbook. (*Remand Opp'n* at 11:5–13.)  As support, Defendants point out that "the word 'idea' cannot even be found in the Complaint."  (*Id.* at 11:14–16.) The Court is not persuaded for several reasons.

First, the elements set forth in *Grosso* for a *Desny* claim do not include alleging the use of an *idea*.  Instead, *Grosso* instructs that plaintiff must establish he or she "prepared *the work*, disclosed *the work* to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of *the work*." *Id.*, 383 F.3d at 968.  The court's reference to "the work" is at odds with Defendants' hyper-technical argument that Gordon's reference to Defendants' use of her Workbook as opposed to the ideas in her Workbook make *Desny* inapplicable.

Second, similar to Gordon's claim, both *Grosso* and *Montz* involved implied breach of contract claims that followed plaintiff's submission of written manuscripts to defendants.  In *Grosso*, the ideas were taken from a screenplay entitled *The Shell Game*

that plaintiff provided to defendants.  *Id.* 383 F.3d at 967. In *Montz*, plaintiff's idea was embodied in screenplays, videos and other material.  *Id.* 649 F.3d at 977; *see also Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193 (9th Cir. 1986) (finding breach of implied contract claim not preempted because plaintiff's "initial disclosure of his *manuscript* was confidential and for the limited purpose of obtaining approval for the use of the Scrabble mark.").

Third, Defendants fail to cite any authority supporting the theory that a *Desny* claim requires plaintiff to allege use of an *idea* opposed to use of the *manuscript*. And finally, while Gordon's Complaint is not a model of clarity on this issue, she alleges her "express intent at all times … was to offer the use of the *concepts* contained in her Workbook and/or services in exchange for compensation…."  (*Compl.* ¶ 9, emphasis added.)  Based on this allegation, it is reasonable to infer that Gordon is suing for Defendants' use of the "concepts" in her Workbook.

For all these reasons, the Court finds Gordon's breach of the implied contract claim is not preempted under *Desny*.

### ii.    Second Cause of Action: Quasi-Contract

Gordon's second cause of action is for quasi contract, as an alternative to the breach of implied contract.  Defendants raise the same preemption arguments with respect to this claim.  (*See Remand Opp'n* at 12:1–22; *See MTD P&A* at 9:12–10:5.) For the reasons stated above, the Court finds the quasi contract claim is not preempted.

### iii.   Third and Fourth Causes of Action: Fraud and Deceit-Intentional and Negligent Misrepresentation

Gordon contends her fraud, and intentional and negligent misrepresentation causes of action are not preempted because the misrepresentation or deception element is not a part of a copyright cause of action. (*Remand Reply* at 6:3–5.) Gordon also argues her claim differs given her relationship with Defendants as a Kaiser member (i.e., patient)

and use of the NDA. (*Id.*)  Defendants argue Gordon's misrepresentation claims are preempted because they are entirely premised on rights protected by the Copyright Act. (*Remand Opp'n* at 19:7–8.)

Under California law, misrepresentation is a necessary element of any fraud claim. *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989). In general, the Copyright Act does not preempt common law or statutory fraud claims because misrepresentation is a necessary element. *Id.* at 776. However, to the extent the misrepresentation claim is merely reasserting defendant's liability for copyright, it is preempted. *McCormick v. Sony Pictures Entm't*, 2008 WL 11336160, at *10 (C.D. Cal. Nov. 17, 2008).

In *Valente-Kritzer*, the Ninth Circuit found that plaintiff's allegation that defendant "intentionally misrepresented its intent to perform the contract" was sufficient to establish that the fraud cause of action was not substantially equivalent to a claim for copyright infringement. *Id.*, 881 F.2d at 776. Relying on this holding, the district court in *Dielsi* found plaintiff's fraud and negligent misrepresentation causes of action were not preempted because he alleged that "Defendants fraudulently promised *not* to violate his authorship rights." *Id.*, 916 F. Supp. at 992.

Here, Gordon's fraud, and intentional and negligent misrepresentation claims allege that Defendants made the following false statements in relation to the NDA:

> … that they would keep such information in strictest confidence, restrict access, and *not (without Plaintiff's approval) use*, publish, copy, or otherwise disclose it, or permit others to use it, and to return it to Plaintiff upon request; and then represented to Plaintiff that they had not shared the materials with others (while simultaneously requesting that Plaintiff destroy the NDA).

(*Compl.* ¶¶ 29, 30, 37, 38, emphasis added.) This allegation is analogous to the allegations in *Valente-Kritzer* and *Dielsi*. Because the "element of misrepresentation … is irrelevant to the cause of action for copyright infringement," these causes of action are

not preempted.  *Tracy v. Skate Key, Inc.*, 697 F.Supp. 748, 751 (S.D. N.Y. 1988) (cited with approval in *Valente-Kritzer*, 881 F.2d at 776).

### iv.    Fifth and Sixth Causes of Action: Intentional and Negligent Infliction of Emotional Distress

Defendants argue Gordon's intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") causes of action are preempted because they rely solely on the alleged unauthorized use and distribution of her Workbook, and do not contain an extra element that transforms the nature of the claims beyond copyright infringement. (*Remand Opp'n* at 20:25–27.) Gordon responds that the claims are not preempted because they are "based on the abuse of a confidential relationship and Defendants' actions towards Plaintiff as a member-patient ('extra element'), and not on the mere infringement of Plaintiff's Workbook."  (*Remand Reply* at 6:7–10.)

In *Giddings v. Vison House Prod., Inc.*, 2007 WL 2274800, at *2 (D. Ariz. Aug. 7, 2007), the district court evaluated whether the intentional infliction of emotional distress cause of action was preempted.  In finding the claim was preempted, the court explained: "[a]lthough the Ninth Circuit has never ruled on this particular issue, courts in other circuits have held that a claim is still preempted if the required extreme and outrageous conduct is rooted in the unauthorized reproduction and distribution of the plaintiff's work." *Id.* at *2; *see also Evans v. NBCUniversal Media, LLC*, 2021 WL 5413624 (C.D.Cal. July 23, 2021) (finding plaintiff's IIED and NIED claims preempted because the claims arise from defendants' alleged infringement of plaintiff's screenplay); *Mills v. Alphabet Inc.*, 2018 WL 1569838 (S.D.N.Y. March 20, 2018) (finding plaintiff's claims for IIED and NIED preempted because they "arise from the same underlying conduct as his copyright infringement claim—that Defendants copied and used Plaintiff's purported work without permission—and do nothing more than seek to vindicate the same rights

that federal copyright law protect."). Although not bound by these cases, this Court agrees with their analysis.

Gordon's IIED and NIED causes of action allege Defendants "obtained and held onto Plaintiff's Workbook (causing Plaintiff to believe she would be compensated therefor), claimed they were uninterested therein, and then used Plaintiff's Workbook without permission demonstrating an intent to cause severe emotional distress to Plaintiff and/or they acted in a conscious disregard of the probability that Plaintiff would suffer severe emotional distress." (*Compl.* ¶ 46.)  Because the conduct causing the severe emotional distress is rooted in Defendants' unauthorized use of Gordon's Workbook, her IIED and NIED claims are preempted.

Nor is the Court persuaded by Gordon's contention that the confidential nature of her relationship with Defendants changes the nature of her claims. In *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), the plaintiff sued for unfair competition, alleging misappropriation of time and effort in creating the copyrighted materials and supporting documents. *Id.* at 977. Plaintiff argued the claim was not preempted because the misappropriation was based on the breach of a fiduciary duty, which was induced by defendants.  The Ninth Circuit rejected plaintiff's argument:

> This argument, however, does not add any 'extra element' which changes the nature of the action.  The argument is constructed upon the premise that the documents and information McCart furnished to the defendants belonged to Del Madera and were misappropriated by the defendants.  Del Madera's ownership of this material, and the alleged misappropriation by the defendants, are part and parcel of the copyright claim.  Thus, Del Madera's unfair competition claim for misappropriation of its time and effort expended in producing the Tentative map and supporting documents is preempted.

*Id.* at 977.  Under *Del Madera*, the proper focus of the equivalent-right prong is not the nature of the parties' relationship, but on the conduct giving rise to the claim. Accordingly, Gordon's reliance on the confidential relationship between her and Defendants is not sufficient to avoid preemption.

23-cv-01507 W (SBC)

### v.   Seventh Cause of Action: Negligence

Gordon's negligence cause of action is also based, in part, on Defendants' improper use of Plaintiff's materials, which includes Defendants' use of "the same phrases, sentences, questions, and exercises" contained in her Workbook.[2] (*Compl.* ¶¶ 14, 55.)  Accordingly, this cause of action is also preempted. *See Dielsi*, 916 F. Supp. at 992 (when "the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim"); *McCormick*, 2008 WL 11336160, at *10 ("because [plaintiff's] reference to negligence depends on acts of unauthorized reproduction, performance, distribution, or display—already proscribed by the Copyright Act—the claim is preempted")

### vi.   Eighth Cause of Action: Business and Professions Code § 17200

Gordon's cause of action for violation of California's Business and Professions Code § 17200 (the "UCL" claim) is based on the wrongful acts alleged in the first seven causes of action: "Said defendants have committed: unlawful acts as described hereinabove; unfair acts that offend established public policies; and fraudulent acts as pled hereinabove." (*Compl.* ¶ 59.) Defendants, therefore, argue this claim is preempted because it based on copyright infringement. (*Remand Opp'n* 17:21–27; *MTD P&A* at 13:6–23.) As set forth above, the Court finds Gordon's first, second, third and fourth causes of action are not preempted.  Accordingly, to the extent the UCL claim is based on those causes of action, it is not preempted.

//

//

//

---

[2] The cause of action is also based on Defendants alleged "false, neglectful, and misleading statements…."  (*Compl.* ¶ 55.)  To this extent, her cause of action is duplicative of the negligent and intentional misrepresentation causes of action.

###### vii.    Ninth Cause of Action: Civil Conspiracy

Gordon's ninth cause of action asserts Defendants "had and have an agreement to perform the wrongful acts described hereinabove such that the law imposes civil liability for the resulting damage on all of them." (*Compl.* ¶¶ 62–63.) Defendants argue Gordon's civil conspiracy claim is nothing more than a dressed-up copyright infringement claim. (*Remand Opp'n* at 24:27–28; 25:1–2.)

Civil conspiracy is not a cause of action under California Law. *See Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 588 (9th Cir. 2020) ("complaint also alleged a cause of action for "civil conspiracy," but as the district court correctly noted, there is no such cause of action under California law"). "Conspiracy is not a cause of action. It is a theory of liability under which persons who, although they do not actually commit a tort themselves, share with the tortfeasor or tortfeasors a common plan or design in its perpetration." *Id.* (quoting *Kenne v. Stennis*, 230 Cal. App. 4th 953, 967 (2014)). "[A] civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006).

Like the UCL claim, Gordon broadly alleges civil conspiracy. (*See Compl.* ¶¶ 62–63.) Gordon's cause of action does not contain any additional substantive allegations and instead is based on her earlier causes of action. To the extent the civil conspiracy is based on the causes of action that are not preempted, it is also not preempted.

### B.    Attorneys' Fees and Costs

Gordon seeks an order requiring Defendants to pay her costs and any actual expenses, including attorney fees, incurred by the removal. (*Remand P&A* 6:13–7:11.)

A court may award attorney's fees under 28 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis for removal. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). When an objectively reasonable basis exists, fees should be denied. *Id.*

23-cv-01507 W (SBC)

Because Gordon's fifth, sixth and seventh causes of action are preempted under the Copyright Act, Defendants had an objectively reasonable basis to remove this case. Gordon is, therefore, not entitled to attorneys' fees.

## IV.   CONCLUSION

For the above stated reasons, the Court **GRANTS IN PART** Defendants' motion to dismiss [Doc. 6] and **DISMISSES WITHOUT LEAVE TO AMEND** Gordon's Fifth, Sixth and Seventh Causes of Action.  Although the removal was proper, the Court declines to exercise supplemental jurisdiction over the remaining causes of action (the First, Second, Third, Fourth, Eighth and Ninth) and instead **GRANTS** Gordon's motion to remand [Doc. 5] these remaining causes of action to the San Diego Superior Court.[3]

**IT IS SO ORDERED.**

Dated:  December 15, 2023

Hon. Thomas J. Whelan
United States District Judge

---

[3] Because the Court declines to exercise supplemental jurisdiction, it also declines to resolve Defendants' alternative arguments for dismissal (i.e., those not based on copyright preemption).

23-cv-01507 W (SBC)